UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT


ONE SOURCE ENVIRONMENTAL, LLC    :
                                 :
        Plaintiff,               :
                                 :
    v.                           :        Case No. 2:12-cv-145
                                 :
M + W ZANDER, INC., M + W U.S,   :
INC., M + W GROUP GMBH, M + W    :
PRODUCTS GMBH, and TOTAL         :
FACILITY SOLUTIONS, INC.         :
                                 :
        Defendants.              :

### Opinion and Order

Plaintiff One Source Environmental, LLC ("One Source") filed this action seeking unpaid commissions it claims it was entitled to under a January 16, 2004 Manufacturer's Representative Agreement ("Agreement").  Plaintiff has also brought claims for tortious interference with contract, tortious interference with prospective business relations, and punitive damages.  Defendants have raised several defenses and Defendant M + W U.S., Inc. ("M + W U.S.") has filed counterclaims.

Discovery negotiations between the parties have reached an impasse.  Both Plaintiff and Defendants have filed discovery motions that are presently before the Court.  For the reasons stated below, the Court holds as follows: 1) Plaintiff's Motion for a Protective Order, ECF No. 190, is **denied** and Defendants' Motion to Compel Mr. Jeffrey Jimmo's Deposition, ECF No. 199, is

**granted**, 2) Plaintiff's Motion to Compel, ECF No. 191, is **granted in part** and **denied in part** and Defendants' Motion for Protective Orders, ECF No. 201, is **granted in part** and **denied in part,** 3) Defendants' Motion to Compel Documents, ECF No. 201, is **granted**, and 4) Defendants' Motion to Quash and for Protective Orders Concerning Plaintiff's Recently Noticed Depositions, ECF No. 203, is **granted in part** and **denied in part**.

## I.   Second Deposition of Jeffrey Jimmo

On June 12, 2013 the Court ordered the parties to conduct limited discovery into jurisdictional issues.  All non-jurisdictional discovery was stayed.  During this period, Defendants deposed Jeffrey Jimmo, founder and principal of One Source.  Plaintiff subsequently moved for a protective order to prevent Defendants from deposing Mr. Jimmo for a second time. Defendants moved to compel Mr. Jimmo's deposition.

The court may issue a protective order to prevent a person from experiencing annoyance, embarrassment, oppression, or undue burden or expense.  Fed. R. Civ. P. 26(c)(1).  The party seeking the protective order has the burden to prove that good cause exists for issuance of the order.  *Brown v. Astoria Fed. Sav. & Loan Ass'n*, 444 F. App'x 504, 505 (2d Cir. 2011) (quoting *Gambale v. Deutsche Bank AG*, 377 F.3d 122, 142 (2d Cir. 2004)).

Plaintiff argues that Defendants went far beyond the limited discovery ordered by the Court and fully covered the

merits of Plaintiff's claims in their first deposition of Mr.
Jimmo.  Defendants argue that substantive issues were
necessarily intertwined with jurisdictional issues and that the
Court should enforce the terms of the joint discovery
stipulation that expressly reserved their right to take a
complete deposition on all non-duplicative topics.

The Court finds that Defendants covered the following
topics related to the merits of Plaintiff's claims:

- Mr. Jimmo's ownership interest in other entities
- Mr. Jimmo's educational and professional background
- One Source's current employees and organization
- Mr. Jimmo's awareness of what products and components M + W manufactured at various points in time
- Contact with M + W before the 2003 Agreement
- Negotiation of both the 2003 and 2004 Agreements, including differences between the two, payment and calculation of commissions, modification or lack thereof
- A potential project and trip to Maine
- Mr. Jimmo's understanding of products versus components
- Specific contract language in the 2003 and 2004 Agreements, Mr. Jimmo's interpretation of that language and its relationship to commission calculation
- Negotiation of each of the five IBM chamber projects, agreements regarding compensation and costs, project components, negotiation and payment of commission, project proposals and purchase orders
- Mr. Jimmo's general and ongoing interpretations of the 2003 and 2004 Agreements
- The Whiting Turner project/IBM Annex Phase 2 project and its negotiation, execution, and calculation of commission
- Entitlement to commission for services or sales in the territory not secured by Mr. Jimmo or in which One Source had no involvement
- The Phase 3 SUNY Albany NanoFab project negotiation and commission calculation

- The contents and Mr. Jimmo's interpretation of the demand letter, first Complaint, the total amount of damages, and M + W U.S.'s interrogatories
- Emails and conversations regarding Markus Huegle's visit to IBM, Mr. Jimmo's reaction, and reference to the Agreement
- The Global Foundries project, Mr. Jimmo's request for and calculation of payment, and its relationship to Mr. Jimmo's interpretation of the Agreement
- Major subcontract agreement between One Source and M + W Zander
- Mr. Jimmo's role and activities as M + W's manufacturer's representative, list of potential customers with whom he met
- Draft Warranty Statement language and interpretation

Any agreement to permit a second deposition to cover non-duplicative issues is particularly difficult to enforce.  The Court is mindful that it cannot anticipate every issue Defendants intend to explore nor whether the issues were fully addressed in the initial deposition.  It is possible that there are specific aspects or nuances of the issues listed above that Defendants previously covered generally but did not address in detail during the jurisdictional deposition.  Therefore the Court orders that Defendants will be allowed two hours at the beginning of the deposition to ask any questions related to the topics above so that any areas not yet covered but related to those issues can be explored.  Defendants may also have two hours to cover entirely new topics, including M + W U.S.'s counterclaims and One Source's financial information.

4

Accordingly, Plaintiff's Motion for a Protective Order is **denied** to the extent it seeks to exclude all non-duplicative testimony. Defendants' Motion to Compel Mr. Jimmo's deposition is **granted**. Defendants are to take a deposition of no more than four hours total, with two hours for questioning on merits-related issues touched upon at the first deposition and two hours for entirely new topics.

## II. Plaintiff's Motion to Compel/Defendants' Motion for Protective Orders

Plaintiff moved to compel production of seven specific categories of information. Defendants moved for a protective order with respect to one of these categories. Each is discussed in detail below.

### A. List of Projects in the Sales Territory

Plaintiff seeks a list of every project in the sales territory during the timeframe of the Agreement in which any M + W entity had any involvement, as well as a statement of the total cost of work for each project, the total revenue derived from each project, and a standard breakdown as to how much of the total contract price and revenue was attributable to labor, design, overhead, profit, and so on.

Plaintiff argues the updated project list Defendants produced on August 7, 2014 is inadequate because it does not provide sufficiently clear or accessible information to enable

5

One Source to properly calculate its damages.  Moreover, some projects are listed as having taken place in another sales territory even though they undeniably took place in the territory covered by the agreement.

Defendants counter that they have complied with the state court's order compelling production of a list of projects undertaken and the total gross revenue for each project on the list.  Defendants also suggest that the reason some projects were inadvertently excluded or presently appear to be geographically mislabeled is because the projects were coded in the accounting records to reflect purchases in locations outside the sales territory covered by the Agreement, for example where the specific accountant was located rather than where the products were delivered or work was performed.

While Defendants' compliance with the state court's order is appreciated, Plaintiff has demonstrated that the breakdown and other information it seeks is relevant to the calculation of damages.  Defendants have not demonstrated that producing such information would be prejudicial.  Accordingly, Plaintiff's motion to compel production of this information is **granted**. Defendants must produce an intelligible statement of the total cost of work for each project, the total revenue derived from each project, and a standard breakdown as Plaintiff requests. Defendants must also clarify which projects actually took place

6

in the territory covered by the Agreement and where each one
took place.

### B. Copies of Other Manufacturer's Representative Agreements Entered into by Defendant M + W U.S., Inc.

Plaintiff seeks production of any Manufacturer's
Representative Agreements between Defendant M + W U.S. and third
parties from 2004 to the present.  Plaintiff argues these other
agreements are relevant to the interpretation of the Agreement
at issue in this case.  Defendants counter that the other
agreements are not relevant because Plaintiff claims the 2004
Agreement was modified or interpreted to mean something
different from the written terms, so no other written terms are
truly comparable.  Defendants' argument goes to weight rather
than relevance.  The content and interpretation of other
Manufacturer's Representative Agreements, especially portions
related to commissions, are undoubtedly relevant.  Therefore,
Plaintiff's Motion to Compel the production of any other
agreements is **granted**.

### C. Email Identified by Bill Spain During His Deposition

In Bill Spain's deposition, he referred to receiving a
company-wide email regarding a change in the corporate name from
M + W Zander to M + W Group.  Plaintiff argues this email is
relevant to the question of the Court's jurisdiction.
Defendants argue that there is no issue in the case concerning

the name change, that a Rule 30(b)(6) witness has already
testified about issues concerning the name change and corporate
structure, and that the email is irrelevant because the Court
dismissed the breach of contract claims against the non-
signatory defendants.  Plaintiff does not present any persuasive
argument as to why this single email is presently relevant.
Therefore, its motion to compel production of the email is
**denied**.

### D. Emails Between Marvin Joanis and Hans Gath

According to Plaintiff, Marvin Joanis was its chief contact
and the M + W employee primarily responsible for negotiating and
preparing the Agreement.  Mr. Joanis had two bosses, one of whom
was Hans Gath.  Mr. Joanis was in regular email contact with Mr.
Gath but Defendants have produced only a small number of emails
between the two.  Plaintiff seeks production of all emails
between Mr. Joanis and Mr. Gath.

Defendants argue they have already produced all responsive,
discoverable emails.  They also explain that there are two
reasons why the production was somewhat light.  First, Mr. Gath
left the company in 2007, so there was no further email
communication after that.  Second, Mr. Gath's email account was
deleted years before the dispute arose so emails could be
produced only to the extent they were maintained on another
custodian's account.

Plaintiff argues Defendants cannot be trusted to appropriately determine what emails are responsive because they have taken the narrow position that documents such as other Manufacturer's Representative Agreements were not relevant. While the Court agrees that the other Agreements are relevant, there is no reason to believe Defendants have not been acting in good faith so far.  Plaintiff's motion to compel the production of all emails between Mr. Joanis and Mr. Gath in Defendants' possession is accordingly **denied**.

### E. Ralf Graeber's and Richard Whitney's Compensation

During Ralf Graeber's deposition Plaintiff's counsel asked him about his current compensation.  Counsel for Defendants objected that it was irrelevant and invasive and instructed Mr. Graeber not to answer.  Defendants moved for a protective order with respect to Mr. Graeber's salary and, though not directly addressed by Plaintiff, Richard Whitney's salary as well. Defendants also objected during Mr. Whitney's deposition and similarly instructed him not to answer.

Plaintiff argues Mr. Graeber's compensation is relevant because it goes to his bias and potential incentive to divert commission payments from Plaintiff in order to reap rewards for sales in Plaintiff's sales territory himself.  Defendants argue demanding salary information was designed only to harass and is not discoverable.

The dollar or Euro amount of Mr. Graeber's and Mr. Whitney's salary is somewhat sensitive information and is not relevant.  However, the underlying compensation scheme and structure, especially with respect to how bonus payments are calculated and paid, is relevant.  Defendants should provide information related to the structure and calculation of Mr. Graeber's compensation, but need not reveal his take home pay.

Plaintiff has already received a copy of Mr. Graeber's initial employment agreement but now seeks a subsequent employment agreement into which the first one was incorporated. Defendants note that Plaintiff concedes the production of this first agreement was "technically adequate."  ECF No. 191 at 16. Defendants must produce the subsequent agreement since it may reveal the way Mr. Graeber's compensation is structured and calculated, but may redact any specific numbers.

Therefore, Plaintiff's motion to compel information regarding Mr. Graeber's compensation is **granted** to the extent it seeks information related to the structure and calculation of his compensation and **denied** to the extent it seeks a total dollar or Euro amount.  Defendants' Motion for Protective Orders is **granted** with respect to Mr. Graeber's and Mr. Whitney's total

compensation and **denied** with respect to how Mr. Graeber's compensation is structured and calculated.[1]

**F. Organizational Charts**

Plaintiff continues to seek production of organizational charts.  Defendants have produced a redacted chart but Plaintiff seeks an unredacted version of any organizational chart in Defendants' possession, including an internal chart about which a deponent testified and separate organizational charts for each of the larger projects on which M + W U.S. works.

Defendants argue the chart it has produced, along with deposition testimony, is sufficient to comply with the Court's July 31, 2013 Order.  ECF No. 140.  They also argue that organizational charts for individual projects, to the extent they exist, are not relevant.  The Court disagrees.  Defendants must produce unredacted versions of any organizational charts in its possession, including any internal versions or project-specific charts.  They may be produced subject to the terms of the confidentiality agreement between the parties.  Plaintiff's motion to compel the production of organizational charts is accordingly **granted**.

---

[1] Plaintiff does not appear to be seeking Mr. Whitney's compensation information and has advanced no argument why its structure and calculation are relevant.

### G. Information Concerning Punitive Damages

Plaintiff suggests its claim for punitive damages has been strengthened through discovery and that it is entitled to Defendants' financial information to support its claim. Plaintiff seeks a statement of annual revenues from 2004 to 2011 derived in the United States by each entity involved, a list of lawsuits in which punitive damages claims have been made against any entity, and a statement of the total going concern value of each of the M + W entities involved in this action.

Defendants argue that it is unclear what additional information Plaintiff seeks, that they have already provided substantial financial information, and that discovery related to punitive damages is premature at this stage.

The Court holds that discovery related to punitive damages is relevant and is not premature. *See, e.g.*, *Turner v. Ctr. For the Deaf & Hard of Hearing*, 2:02-cv-251, 2003 U.S. Dist. LEXIS 20552 (D. Vt. Oct. 1, 2003); *Christy v. Ashkin*, 972 F. Supp. 253 (D. Vt. 1997). Plaintiff is therefore entitled to all the information it seeks and its motion to compel is **granted** with respect to all categories. Any information disclosed should be subject to the confidentiality agreement between the parties.

## III. Defendants' Motion to Compel

Defendants also moved to compel production of three specific categories of information. Each is addressed in detail below.

### A. Financial Information Concerning Alleged Damages

Defendants claim that Plaintiff has provided no financial information in discovery and that they need information such as revenue and profitability summaries, annual financial statements, profit and loss statements, and current year-to-date financial documents to demonstrate how Plaintiff was affected by the termination of the 2004 Agreement.  Defendants point to several paragraphs in the Second Amended Complaint in which Plaintiff suggests it was harmed by Defendants' conduct by means other than failure to pay commissions, such as missed opportunities, ancillary work, and a reasonable expectation of future revenue.

Plaintiff argues its financial information is not relevant to its claim for damages because One Source is not making a claim for diminution of business value but rather seeks only damages related to sales commissions.  Plaintiff's claim, however, is belied by its own Opposition to Defendants' Motion which states that "Plaintiff is also seeking damages for lost ancillary work it would have performed had Defendants not breached the Agreement."  ECF No. 209 at 14.  Plaintiff's

complete financial information is therefore relevant to the calculation of damages and Defendants' motion to compel its production is **granted**.

**B. Documents and Information Concerning Counterclaims**

In its counterclaims, M + W U.S. alleges One Source breached the Agreement by using trade secrets to design and manufacture its own self-branded cleanroom products and by serving as a manufacturer's representative for other cleanroom product manufacturers. Defendants seek information related to the sale and marketing of cleanroom products other than those manufactured by an M + W entity, including volume, price, and profitability of sales.

Defendants argue that Plaintiff does not dispute that it manufactured self-branded cleanroom products and they also point to evidence suggesting Plaintiff had served as a manufacturer's representative for other manufacturers.  Defendants, therefore, argue that they are entitled to test whether those products and activities violated the non-compete provision of the Agreement. Moreover, Defendants argue that knowledge of Plaintiff's competitive activities is immaterial to discovery requests for information on these matters.

Plaintiff argues M + W U.S.'s counterclaims are baseless so Defendants are not entitled to any discovery and that it has already produced sufficient information related to Defendant's

14

counterclaims.  Moreover, Plaintiff claims none of the non-M + W brand equipment or products sold were competitive with M + W products and M + W knew and approved of One Source's activities. Plaintiff is also concerned Defendants seek production of highly sensitive proprietary customer lists, client contact lists, and so on.

Defendant's counterclaims are still live claims and the information Defendants seek is relevant.  M + W U.S. is entitled to evidence that will help it develop its counterclaims. However, any request for customer and contact lists is overly broad and their disclosure would be highly prejudicial. According Defendants' motion to compel is **denied** with respect to customer and contact lists and **granted** with respect to other information related to the sale and marketing of cleanroom products other than those manufactured by an M + W entity, including volume, price, and profitability of sales, as well as any agreements with any other manufacturers.

### C. Privilege Log

Defendants request a privilege log in their Motion to Compel but provide no argument.  Plaintiff does not mention a privilege log in its Opposition.  The Court presumes this means it is not opposed to producing one.  To the extent One Source has withheld privileged documents and no privilege log has been

15

produced, Defendants' motion to compel the production of a
privilege log is **granted**.

**IV.  Defendants' Motion to Quash and for Protective Orders**

Plaintiff has recently noticed several depositions, three
of which Defendants has moved to quash.  Defendants have also
moved for related protective orders.  Each is addressed in turn
below.

**A. Rule 30(b)(6) Deposition of M + W Products GMBH**

Defendants argue Plaintiff's notice of a second Rule
30(b)(6) deposition of M + W Products GMBH ("M + W Products") is
defective and duplicative because M + W Products has already
been deposed pursuant to a broad notice.  Moreover, Defendants
did not stipulate to having a second deposition taken.  Finally,
Defendants claim that the notice does not describe the topics to
be discussed with reasonable particularity but rather seeks
financial details regarding all projects and work ever performed
by M + W Products in the sales territory without a time limit.

Plaintiff counters that the deposition previously taken,
like Mr. Jimmo's, was limited to issues related to jurisdiction
and that determining how M + W Products performed in the sales
territory covered by the Agreement is relevant.  Plaintiff also
raises for the first time new allegations it intends to explore
in the deposition of M + W Products.

16

Because the parties were previously limited to jurisdictional issues, the Court will permit counsel for Plaintiff to ask questions on non-duplicative topics.  The parties have not submitted the complete transcript of the first deposition so the Court is unable to make findings as to what topics were previously covered.  Defendants' Motion to Quash is **denied**.  Plaintiff is limited to asking about projects in the timeframe of the Agreement and within the sales territory covered by the Agreement.  Accordingly, Defendant's Motion for Protective Orders is **granted in part** and **denied in part**.

**B. Rule 30(b)(6) Deposition of M + W U.S., Inc.**

Defendants argue the notice directed at M + W U.S. is defectively overbroad for the same reasons as the M + W Products notice because the two seek essentially the same information and it similarly fails to state with reasonable particularity the subjects for examination.  Defendants also argue that Plaintiff's attempt to discover the complete factual basis of M + W U.S.'s counterclaims is overbroad, burdensome, and highly inefficient.

Plaintiff argues Defendants have failed to provide complete and intelligible information regarding the work performed by M + W U.S. in the territory covered by the Agreement during the relevant timeframe.  Moreover, Plaintiff asserts that Defendant's counterclaims are frivolous and that it is entitled

17

to discover M + W U.S.'s good faith basis for bringing and maintaining them since such information has not otherwise been produced in discovery.  M + W U.S. is the only entity that has brought counterclaims so it is reasonable that a deposition exploring these issues be directed to this Defendant.

For the same reasons described above in Section IV.A, Plaintiff is entitled to inquire about all projects within the sales territory and timeframe covered by the Agreement.  As for the counterclaims, Plaintiff is also entitled to explore the good faith basis of M + W U.S.'s counterclaims.[2]  The Court is mindful that the counterclaims may continue to evolve because the parties have not completed discovery and both sides are waiting on information that in their view is important. However, this can be remedied through ongoing updates as discovery continues.  Defendants' Motion to Quash is **denied**. Plaintiff is limited to asking about projects in the timeframe of the Agreement and within the sales territory covered by the Agreement.  Accordingly, Defendant's Motion for Protective Orders is **granted in part** and **denied in part**.

---

[2] Plaintiff notes in its Opposition to Defendants' Motion to Compel that although it has not received any written discovery, deposition testimony has revealed that none of Defendants' employees were aware of any factual basis for the counterclaims and none were consulted before they were filed.  This raises the issue of whether the counterclaims were made in good faith, which Plaintiff is entitled to explore through its deposition of the Defendant asserting those counterclaims.

**C. Deposition of Herbert Blaschitz**

Defendants argue deposing Herbert Blaschitz, Managing Director of M + W Products GMBH, is inappropriate for several reasons.  First, Plaintiff presumably seeks to question him about the same subject matter that has already been asked of three other witnesses.  Next, Mr. Blaschitz lives in Germany and has a busy schedule, but is uncomfortable being deposed by videoconference because English is not his first language. Finally, any questions Plaintiff might want to ask about the sale of products in the sales territory covered by the Agreement are unnecessary because Defendants' production has already been sufficient on that front.

Plaintiff counters that it is entitled to question the individual who has direct first-hand knowledge rather than relying on second-hand hearsay and disputes that what Defendants have provided already is sufficient.  Additionally, the previous depositions were limited to jurisdictional issues.  Mr. Blaschitz was the head of M + W Products GMBH the entire time the Agreement was in place and therefore has the most knowledge of the issues.  Plaintiff also claims Mr. Blaschitz may have knowledge relevant to the new allegations it intends to explore.

Plaintiff is entitled to depose Mr. Blaschitz.  While it is understandable that he may want to be in the same room as his lawyers, Plaintiff will not be required to travel to Germany

19

since Mr. Blaschitz routinely travels to the United States on business.  Fed. R. Civ. P. 45(c).  The deposition may take place in New York.  Defendants' Motion to Quash and for a Protective Order is accordingly **denied**.

Dated at Burlington, in the District of Vermont this 9th day of October, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge
