## UNITED STATES DISTRICT COURT
### FOR THE
### DISTRICT OF VERMONT

ONE SOURCE ENVIRONMENTAL, LLC     :
                                  :
          Plaintiff,              :
                                  :
     v.                           :     Case No. 2:12-cv-145
                                  :
M + W ZANDER, INC., M + W U.S,    :
INC., M + W GROUP GMBH, M + W     :
PRODUCTS GMBH, and TOTAL          :
FACILITY SOLUTIONS, INC.          :
                                  :
          Defendants.             :

### Opinion and Order

Plaintiff One Source Environmental, LLC ("One Source") has filed two motions currently pending before the Court.  First, One Source moves to modify the Second Amended Discovery Schedule/Order to: 1) to allow Plaintiff forty-five days from the receipt of outstanding discovery to issue its expert reports and 2) to approve an expedited discovery schedule relating to Defendants' unauthorized use of Underwriters Laboratories' ("UL") marks.  ECF No. 212.  Second, One Source moves for leave to amend its Complaint to add claims relating to the allegedly unauthorized use of UL marks.  ECF No. 213.  Defendants oppose both motions.  For the reasons stated below, the Court **grants** Plaintiff's motions.

### I.  Factual Background

One Source filed this action in Vermont Superior Court on

February 22, 2011 claiming Defendants M + W Zander, Inc., M + W
U.S., Inc., and M + W Holding Gmbh violated a January 16, 2004
Manufacturer's Representative Agreement.  Its original Complaint
included claims for breach of contract and breach of the implied
covenant of good faith and fair dealing.  One Source filed a
motion to amend its Complaint on May 8, 2012 in order to
accomplish several goals: first, to add three new Defendants, M
+ W Group GmbH, M + W Products Gmbh, and Total Facility
Solutions, Inc.; second, to delete Holding as a Defendant;
third, to supplement its allegations with information gleaned in
discovery; fourth, to add claims for tortious interference with
contract and tortious interference with prospective business
relations; and fifth, to add a claim for punitive damages.  Then
State Judge Crawford granted the motion on June 14, 2012.

Before One Source served its amended complaint, Defendants
removed the case to federal court on June 28, 2012.  One Source
moved to remand.  The Court denied its motion and directed One
Source to file its Amended Complaint in federal court.  In its
Answer to the Amended Complaint, Defendant M + W U.S., Inc.
first filed counterclaims against Plaintiff.

On March 8, 2013 Defendants filed a motion to dismiss and
moved to stay discovery during the pendency of the motion.  The
Court held a hearing on June 12, 2013 and denied the motion
without prejudice.  The Court permitted One Source to file a

2

Second Amended Complaint and ordered the parties to conduct limited discovery into jurisdictional issues with respect to the German Defendants.  The counterclaims in Defendants' Answer to the Second Amended Complaint include breach of contract, breach of the implied covenant of good faith and fair dealing, tortious interference with contract, intentional interference with prospective contractual relations, and declaratory judgment.

Defendants filed their Motion to Dismiss and Motion for Partial Summary Judgment on October 31, 2013, which the Court granted in part and denied in part on April 4, 2014.  The Court dismissed Counts II-VI of the Second Amended Complaint without prejudice.  Defendants moved the Court to reconsider but the Court denied their request.

According to One Source, in late 2013 or early 2014 it learned that Defendant M + W Products GmbH ("M + W Products") may have affixed unauthorized UL stickers to certain products it sold to One Source in 2004.  UL is an independent safety science company that, among other things, develops international safety standards, tests products, and certifies that products meet those safety standards after testing.  One Source has not explained how or from whom it first learned that the stickers may have been unauthorized.

On January 8, 2014, One Source attempted to verify this information by first asking Defendants whether the products were

properly UL-listed.  Defendants neither confirmed nor denied the
accusation.  In correspondence dated February 19, 2014, One
Source asked UL directly to investigate whether the filter fan
units were properly marked as UL-listed.  One Source followed up
with Defendants to find out whether UL had advised them about
the status of the marks, but Defendants never advised One Source
that UL had made a determination.  On September 8, 2014, One
Source received an email directly from UL advising One Source
that M + W Products' use of UL marks on items it sold to One
Source was indeed unauthorized.

The products in question are two models of filter fan
units, which were ultimately incorporated into mobile clean air
units manufactured by One Source.  One Source's purchase of
these filter fan units was contingent on UL certification.  One
Source sold these filter fan units to its biggest customer, IBM,
which required that all component parts of the mobile clean air
units it purchased from One Source be UL-listed.  One Source
sold other units to customers in New York, California, and
Maine.  It also leases some to customers for use on various
projects.

Plaintiff seeks leave from the Court to add four new claims
in light of the recent communication from UL:  1) violations of
the Lanham Act's prohibition on false endorsement, 15 U.S.C. §
1125(a)(1), 2) violations of Vermont's Consumer Protection Act,

9 V.S.A. § 2451 *et seq.*, 3) negligent misrepresentation, and 4) intentional misrepresentation.

## II.  Legal Standard

Generally, a court "should freely give leave" to a party seeking to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Leave to amend, though liberally granted, may be properly denied within the Court's discretion for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  If the amended claims could not withstand a motion to dismiss pursuant to Rule 12(b)(6), then leave to amend may also be denied.  *See Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002).

The lenient standard for amendments also must be "balanced against the requirement under Rule 16(b) that the Court's scheduling order shall not be modified except upon a showing of good cause."  *Citibank N.A. v. City of Burlington*, No. 2:11-CV-214, 2013 WL 6528515, at *9 (D. Vt. Dec. 10, 2013) (quoting *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009)).

5

Whether good cause to modify a scheduling order exists turns on "the diligence of the moving party." *Holmes*, 568 F.3d at 335.

## III. Analysis

Defendants raise several arguments as to why One Source should not be given leave to amend its complaint and why its request to modify the discovery schedule is therefore moot. First, Defendants argue that the claims One Source seeks to add are wholly unrelated to those presently before the Court and that the law does not allow such amendments. Defendants claim that One Source has conceded that the UL issues are entirely unrelated to this case because counsel for One Source agreed that "the UL sticker issue is not directly related to the existing claims in our Amended Complaint" in correspondence between the parties' attorneys. Mennitt Dec., Ex. B. Moreover, Defendants argue that there is no substantive factual overlap, nor are there any legal issues in common between the existing claims involving the termination of the Manufacturer's Representative Agreement and the new claims involving product sales in late 2004.

One Source counters that the proposed claims relate directly to claims already in the case. One Source ordered the allegedly falsely-marked filter fan units in connection with its effort to promote and advance the sale of Defendants' products as called for by the Manufacturer's Representative Agreement.

6

One Source suggests that the false markings are emblematic of Defendants' evasion of the spirit of the bargain and willful rendering of imperfect performance because Defendants knew the component parts would be incorporated into a significant project for One Source's biggest customer and that customer required UL listing of component parts.

    As an initial matter, the cases Defendants' cite in support of its argument are distinguishable.  First, in *Smith v. Yonkers Police Department*, 152 F.3d 920 (2d. Cir. 1998), the court found it relevant that the plaintiff's motion to amend came almost five years after he filed his complaint.  *Id.* at *1.  Moreover the court does not describe what the new claim the plaintiff sought to add actually was, so no meaningful comparison can be made to the facts of this case.  Second, in *Citibank*, 2013 WL 6528515, Citibank had notice of the facts underlying the claims it sought to add well before the depositions where it claimed it first learned the new information took place.  Moreover, even if Citibank did discover new information sufficient to justify the amendment in the depositions, it was not diligent in filing its motion.  It waited two months and allowed seven other depositions to proceed before notifying anyone of its intention to add new claims.  Here, One Source waited only one month to

file its motion to amend after receiving the email from UL and no depositions appear to have been taken in the interim.[1]

The Court is persuaded that One Source's new claims are sufficiently related to the overall course of conduct between the parties during the existence of the Manufacturer's Representative Agreement and One Source's existing claims for breach of contract and tortious interference.  The UL claims potentially shed light on Defendants' conduct and state of mind during the course of the Agreement and support One Source's claim for punitive damages.  That One Source suggested the claims were "not directly related" does not render them so unrelated as to make an amendment inappropriate in this case.

Second, Defendants argue that One Source's motion was filed after the deadline for motions to amend, but One Source has not identified good cause for its failure to meet that deadline.[2] Defendants suggest that because One Source has known about the

---

[1] One Source first alerted the Court that it would move to amend its Complaint in its Motion to Modify the Second Amended Discovery Schedule/Order to Extend Deadlines even earlier on September 25, 2014.

[2] The cases Defendants cite to support this argument are distinguishable.  In *Milo v. University of Vermont*, No. 2:12-cv-124, 2013 WL 4647782 (D. Vt. Aug. 29, 2013), the plaintiff received the relevant information in discovery months before the amendment deadline.  In *Lowry v. Eastman Kodak Co.*, 14 Fed. App'x 27 (2d Cir. 2001), plaintiff waited five months after receiving new information before moving to amend and a motion for summary judgment was pending at that time.  Here One Source waited only one month and no motion for summary judgment is pending.

factual basis for the UL claims to some extent since January 2014 that it had ample opportunity to seek leave to amend before the deadline passed.  Defendants also note that counsel for One Source stated in an email that it would either ask the court to extend the deadline or add a claim based on information and belief but did not timely do so.

One Source does not dispute that the amendment deadline has passed.  Rather it claims that it did not have an adequate good faith basis to raise the UL-related claims until it received confirmation from UL in September of this year.  When One Source contacted defense counsel shortly before the amendment deadline to inquire whether UL had issued its report to Defendants, counsel for Defendants responded "I am not aware of any good faith basis for a claim concerning UL listings in the context of this case."  Mennitt Dec., Ex. E.

That One Source waited to raise these claims until it had some sort of confirmation that they were based on facts rather than speculation is understandable.  Defendants neither confirmed nor denied the accusation, so One Source was as diligent as could be expected under the circumstances.  There is now good cause to amend that did not exist until UL confirmed that the stickers were unauthorized.

Next, Defendants suggest that permitting an amendment at this late stage would prejudice them.  The new claims will

require additional discovery, which Defendants describe as a
"fishing expedition."  ECF No. 220 at 6.  They also note that
the deadline was more than two months ago and the original
deadline for the close of discovery is very close in time.  One
Source submits that prejudice to Defendants will be minimal
because the key witnesses regarding the UL issues from both
sides have yet to be deposed and likely will not be deposed for
several weeks.  It also notes that it would waste judicial
resources to require One Source to file a separate suit
concerning only its UL claims.

     Any potential prejudice to Defendants will be minimal since
key depositions have yet to be taken and experts have not yet
been designated or deposed.  While both sides will be burdened
by some additional delay, expense, and difficulty due to this
additional discovery, the Court does not find any potential
prejudice significant enough to overcome the lenient amendment
standard.  As was the case in *Naylor v. Rotech Healthcare Inc.*,
679 F. Supp. 2d. 505 (D. Vt. 2009), One Source's new legal
theory arises from the same underlying events, *i.e.* the course
of conduct between the parties during the existence of the
Manufacturer's Representative Agreement, and there is
significant overlap between background facts and issues to be
proved at trial.

Finally, Defendants argue that One Source's amendment would be futile because all four of the claims One Source seeks to add are subject to six-year statutes of limitations.  According to Defendants, the claims all accrued when One Source should have known of the UL labeling issue – in other words, in 2004 when it purchased the filter fan units.[3]  Defendants submit that One Source was legally obligated to test and inspect the filter fan units at the time they were purchased in 2004 prior to their incorporation into the mobile clean air units sold to other customers.

Defendants cite case law suggesting that a manufacturer that incorporates a component part made by another has a duty to test and inspect such a component.  This argument, however, ignores the function of the UL inspection and certification.  As One Source points out, an obligation to independently verify that the UL marks were legitimate "would defeat the very purpose

---

[3] Defendants do not directly dispute that One Source has standing to bring claims under the Lanham Act but the Court notes that the case One Source cites for the test for standing, *Famous Horse Inc. v. 5th Ave. Photo Inc.*, 624 F.3d 106 (2d Cir. 2010), has been recently abrogated by the Supreme Court's unanimous decision in *Lexmark International Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014).  The *Lexmark* Court held that to invoke the Lanham Act's cause of action under 1125(a) a plaintiff must plead and ultimately prove a "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." *Lexmark*, 134 S. Ct. at 1395.  One Source claims it has suffered and will suffer financial damages and reputational harm as a result of the false UL marks, so One Source appears to have standing.

of having UL marks and render such marks meaningless." ECF No.
221 at 6. The presence of the mark signifies that the product
has already passed UL's rigorous safety and reliability checks.
Defendants cite no case suggesting that One Source had any duty
to independently verify the components' safety rather than
relying on what the UL mark signified: rigorous safety
inspection by a third party.

Defendants also argue that One Source's amendment would be
futile because the new claims, particularly intentional
misrepresentation, fail to satisfy the pleading requirements of
Rule 9(b). Defendants argue that One Source's new claims, as
One Source proposes to plead them, do not give rise to a strong
inference of fraudulent intent as the rule requires. One Source
counters that Rule 9(b) could only potentially apply to its
intentional misrepresentation claim, but argues that its
proposed amendment is more than particular enough to satisfy the
pleading requirements of the Rule. One Source points out that
its complaint need only: 1) specify the statements that the
plaintiff contends were fraudulent, 2) identify the speaker, 3)
state where and when the statements were made, and 4) explain
why the statements were fraudulent. *SEC v. Terry's Tips, Inc.*,
409 F. Supp. 2d 526, 533 (D. Vt. 2006) (quoting *Rombach v.
Chang*, 355 F.3d 164, 170 (2d. Cir. 2004)).

The only question at this point is whether One Source can meet the pleading requirements for fraud, in other words if it can identify the who, what, where, and why that the rule requires as explained above.  At this early stage, One Source's pleading satisfies Rule 9(b)'s particularity requirement.  The Court will permit discovery into Defendants' specific representations to go forward.[4]

Accordingly, One Source's motions to modify the discovery schedule and amend its complaint are granted.  The Court accepts One Source's proposed Third Amended Complaint attached to its Motion.  Defendants may have thirty days from the date of this opinion to file their Answer.  One Source may have forty-five days from the receipt of outstanding discovery to submit its expert reports.  Furthermore, the Court orders the parties to confer and submit a revised discovery schedule within thirty days of this order.

Dated at Burlington, in the District of Vermont this 20th day of November, 2014.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge

---

[4] In their Opposition to Plaintiff's Motion to Modify and Extend Deadlines, ECF No. 215, Defendants suggest that One Source has suffered no legally cognizable damages but that the issue is beyond the scope of the motion at hand.  While the Court will permit One Source to amend its Complaint and will permit expedited discovery on the UL claims, this decision is without prejudice to additional motions Defendants may choose to file.

13