```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT


ONE SOURCE ENVIRONMENTAL, LLC    :
                                 :
         Plaintiff,              :
                                 :
      v.                         :     Case No. 2:12-cv-145
                                 :
M + W ZANDER, INC., M + W U.S,   :
INC., M + W GROUP GMBH, M + W    :
PRODUCTS GMBH, and TOTAL         :
FACILITY SOLUTIONS, INC.         :
                                 :
         Defendants.             :
```

## Opinion and Order

Plaintiff One Source Environmental, LLC ("One Source") filed this action seeking, among other things, unpaid commissions it claims it was entitled to under a Manufacturer's Representative Agreement.  Discovery in this case has been contentious and the discovery schedule has been modified or extended on multiple occasions.  Most recently, the Court set July 15, 2015 as the final date by which all discovery must be completed.  ECF No. 272.  On June 30, 2015 Defendants moved to compel production of three things: 1) documents on which One Source's expert relied, 2) additional "breakdown" of One Source's products and services, and 3) information concerning J.J. Jimmo Development Company.  ECF No. 289.  For the reasons set forth below, Defendants' motion is **granted in part and denied in part.**

I. Relevant Background

A. The Balzer Report

Defendants recently moved to strike the report of One Source's expert regarding damages, Glen Balzer. ECF No. 287. The Court denied that motion. Mr. Balzer relied on many sources of information in forming his opinions on industry custom and practice, including his own library of more than 275 representative agreements. *Id.* at 3. In his report, Mr. Balzer states:

> In my history of dealing with representative agreements, dating back to the 1970s, I remember dealing with no agreements that allowed a manufacturer to retain a portion of the manufacturers' representative's commissions for itself. I sampled my library of over 275 representative agreements and could find no example of an agreement whereby a manufacturer could trim the commissions it pays out by claiming that the manufacturer performed activity during the selling process.

ECF No. 268-3 at 16. The Defendants now seek to obtain the agreements in Mr. Balzer's professional library.

B. Discovery Regarding Defendant's Counterclaim

On October 9, 2014 the Court granted Defendants' motion to compel production of evidence related to Defendant M + W U.S. Inc.'s counterclaims. *See* ECF No. 214 (the "October Order").[1] Specifically the Court ordered One Source to produce

---

[1] The Court amended the October Order to correct a small clerical error in January. *See* ECF No. 236. The Amended Opinion and Order made no substantive changes.

2

"information related to the sale and marketing of cleanroom products other than those manufactured by an M + W entity, including volume, price, and profitability of sales, as well as any agreements with any other manufacturers." *Id.* at 15.  In response to the October Order, One Source produced a one-page chart, which it further supplemented by breaking down the "Other" category to separate items related to the Defendants' projects.  *See* ECF No. 271 at 13-14 (the "April Order").  The Court concluded that One Source's one-page chart and subsequent modified chart were "insufficient to enable Defendants to understand what products One Source sold during the period of the Agreement." *Id.* at 14.  The Court therefore ordered that One Source "break down the 'OSE Products' and 'OSE Products/Services' in a way that enables the Defendants to understand what items are included in these categories and the price and volume of each sold." *Id.*  In the alternative, the Court gave One Source the option to "provide source documents that enable Defendants to do so." *Id.*  The Defendants claim that One Source has failed to comply with the Court's order.

   **C.  J.J. Jimmo Development Company**

   One Source is a sole proprietorship operated by Jeffrey Jimmo.  As far as the Court is aware, Mr. Jimmo has been deposed twice: once in the context of limited jurisdictional discovery earlier on the process and once again in March of 2015.  Mr.

Jimmo owns another company that is not a party to this suit named J.J. Jimmo Development Company ("JJ Jimmo"). On March 19, 2015 Mr. Jimmo testified about his other company's involvement in cleanroom construction. The Defendants now seek discovery related to JJ Jimmo.

## II. Discussion

### A. Representative Agreements Considered by Mr. Balzer

The Defendants move to compel production of the 275 manufacturer's representative agreements in Mr. Balzer's professional library. Defendants claim they are entitled to the agreements pursuant to Federal Rule of Civil Procedure 26, which requires an expert witness's report to contain "a complete statement of all opinions the witness will express and the basis and reasons for them" as well as "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). The Advisory Committee's note to the 2010 amendment to Rule 26 explains that the rule was amended from "data or other information" as proscribed in 1993 to "facts or data considered" in 2010. The amendment was intended "to alter the outcome in cases that have relied on the 1993 formulation in requiring disclosure of all attorney-expert communications and draft reports." *Id.* The note goes on to explain:

> The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At

4

> the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

*Id.* Mr. Balzer clearly "considered" the representative agreements in some way when forming his opinions. *Id.* The question is whether the 275 agreements "contain[] factual ingredients." *Id.* At first blush it seems that they do because the contents of each agreement are a small piece of the puzzle informing Mr. Balzer's overall opinion regarding common practice in the industry. However, the content of any single agreement has little significance on its own. It is the aggregate impression Mr. Balzer took away from his library and his familiarity with other agreements that represent the crux of his conclusions.

The contents of the sample of agreements Mr. Balzer specifically consulted, however, are more significant. It is possible that those particular agreements do not support Mr. Balzer's opinion in every respect. The Defendants are entitled to understand what the agreements in the sample say in case they provide fodder for cross examination.

One Source argues that it would be unduly burdensome to compel production of every agreement in Mr. Balzer's library because the agreements contain significant proprietary and

confidential information that would have to be redacted.  While Mr. Balzer's collection informs his opinion in the aggregate, the Court is persuaded that the potential burden far outweighs what marginal benefit the Defendants might receive from reviewing Mr. Balzer's entire library.  Redacting the subset of agreements Mr. Balzer specifically reviewed imposes a much smaller burden on One Source.  Alternatively, One Source may produce the sampled documents pursuant to the terms of the protective order between the parties and may designate them "confidential – attorney retained."  If the Defendants intend to use any particular document from the sample at trial One Source can make the appropriate redactions at that time.

Accordingly, One Source must produce the sample of documents from Mr. Balzer's library that he consulted with either appropriate redactions or with a confidential designation pursuant to the terms of the parties' protective order. Defendants' motion is **granted** with respect to this sample but **denied** with respect to the remaining documents in the library.

### B. One Source Products and Services

Next, the Defendants move to compel additional information related to One Source products and services to support M + W U.S.'s counterclaims.  As described above, the Court has already ordered One Source to produce the information the Defendants seek to obtain.  One Source took steps to comply with the

Court's first order by producing an analysis of its product sales by category (the "Products Spreadsheet").  The Court ordered One Source to break down the relevant categories on the Products Spreadsheet or provide the source data to enable the Defendants to do so.  One Source then produced the Profit and Loss Detail Statements (the "Detail Statements"), which document every single income-generating transaction from 2004 to 2011.  These Detail Statements are the source documents used to produce the one page analysis.  One Source has now produced both the raw data (the Detail Statements) and One Source's own interpretation of that raw data (the Products Spreadsheet).

The Court is persuaded that there is not a $1.2 million dollar discrepancy between these two documents as the Defendants claim.  One Source has provided a satisfying explanation as to why the automatic categorization by QuickBooks is not identical to the hand-sorted summary Ms. Boucher compiled.  Moreover, One Source attempted to offer this explanation by email and tried to walk Defendants' counsel through their confusion.  Any differences between the two reflect One Source's own categorization rather than QuickBooks' automatic categorization.

It appears that One Source has produced the source information the Court ordered.  However, One Source must take an additional step to link the first and second productions together.  Since the QuickBooks categorization does not match

7

the hand-picked categorization by Ms. Boucher, Defendants do not have a way to sort each line item into the appropriate bucket on the Products Spreadsheet.  Next to each item in the Detail Sheets, One Source must indicate what category that item belongs to on the Products Spreadsheet but it need not produce the underlying transactional documents or invoices.  Essentially it must enable the Defendants to understand which items on the Detail Statements belong in the relevant categories on the Products Spreadsheet.

The Defendants claim that they are unable to understand what the individual items on the Detail Statements mean but make no proffer that they have reviewed the document with their clients, a leader in the clean room manufacturing industry. Defendants' expert's report, however, states that the "item descriptions" on the Detail Sheets are "incomplete" and that "additional detail is required."  ECF No. 304 at 8.  If the Defendants are unable to understand the significance of certain transactions after consulting with their clients, counsel for One Source has offered to provide additional clarification. Although One Source is not required to perform the analysis for the Defendants in the first instance, it must clarify any uncertain line items the Defendants identify after reviewing the Detail Sheets, including, for example, generic descriptors such as "materials."

Accordingly the Defendants' motion is **granted** with respect to the information required to link the Detail Statements and the Products Spreadsheet.  One Source will also be required to further explain any ambiguous line items after counsel for the Defendants have consulted with their clients.  Defendants' motion is **denied** in all other respects for this category of documents.

### C.  J.J. Jimmo Development Company

Finally, Defendants request information concerning another company belonging Mr. Jimmo.  According to One Source, JJ Jimmo is a general construction company.  Defendants characterize it as clean room construction company.  Months after Mr. Jimmo's second deposition the Defendants, for the first time, requested information related to JJ Jimmo.  Their motion now seeks "documents reflecting the itemization, economics, and other details of JJ Jimmo's cleanroom-related product sales and cleanroom construction projects."  ECF No. 289-1 at 10. Defendants also seek to depose Mr. Jimmo for a third time.

The Defendants have already had an opportunity to depose Mr. Jimmo about the work his other company has previously performed and have raised no persuasive argument why that prior opportunity was insufficient.  The Court is likewise unpersuaded by the Defendants' argument that they are entitled to additional documents for two reasons.  First, the Defendants' request is

9

untimely.  One Source claims that the Defendants have been aware of JJ Jimmo's existence since 2013.  At a minimum, the Defendants were on notice of Mr. Jimmo's testimony concerning JJ Jimmo for months before they made any request for more information.  Their request came too close to the end of discovery.  Second, One Source has already informed the Defendants that JJ Jimmo is not involved in clean room construction from the ground up and has not engaged in any activities remotely competitive with the Defendants.  To permit the Defendants to go down this road could open up Pandora's box and lead to additional discovery disputes that seem entirely unnecessary at this point.

   Accordingly, the Defendants' motion is **denied** with respect to additional information concerning JJ Jimmo.

   DATED at Burlington, in the District of Vermont, this 4th day of August, 2015.

                              /s/ William K. Sessions III
                              William K. Sessions III
                              District Court Judge